IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRANCE GRISSOM,

                OPINION and ORDER

      Plaintiff,

                14-cv-194-jdp[1]

v.

JAMES R. SCHWOCHERT and EDWARD WALL,

      Defendants.

---

      Pro se plaintiff Terrance Grissom, a prisoner currently incarcerated at the Green Bay Correctional Institution, has filed this proposed civil lawsuit under 42 U.S.C. § 1983 alleging that high-ranking prison officials James Schwochert and Edward Wall failed to protect him from the threat of assault by prison staff and allowed him to be placed in conditions of confinement that exacerbated his mental illnesses. Plaintiff seeks leave to proceed *in forma pauperis*, but he has struck out under 28 U.S.C. § 1915(g), which means that he cannot obtain indigent status under § 1915 in any suit he files during the period of his incarceration unless he alleges facts in his complaint from which an inference may be drawn that he is in imminent danger of serious physical injury.

      After considering plaintiff's allegations, I conclude that he properly alleges that he was in imminent danger at the time he filed his complaint and will allow him to proceed on a failure to protect claim against defendant Schwochert. However, I will stay service of the complaint on Schwochert to give plaintiff a chance to amend his complaint to provide a better explanation of his remaining claims.

---

[1] This case was reassigned to me pursuant to a May 19, 2014 administrative order. Dkt. 12.

The following facts are drawn from plaintiff's complaint and attached documents.

## ALLEGATIONS OF FACT

Plaintiff is mentally ill (although he does not state what illnesses he suffers from, a document attached to his motion for appointment of counsel states that he has been diagnosed with psychotic disorder, not otherwise specified; and antisocial personality disorder). On January 3, 2014, while plaintiff was incarcerated at the Waupun Correctional Institution (WCI), he was beaten and tased by unidentified correctional officers. Plaintiff was then escorted to a strip cage and handcuffed to a door. The officers cut off plaintiff's clothes, and one officer "grabbed [plaintiff's] private parts and [squeezed plaintiff's] buttocks with his hand." They also "made threats to commit terroris[t] acts." Plaintiff states that "there is an ongoing pattern of abuse." He wrote to defendant Edward Wall, secretary of the Wisconsin Department of Corrections, stating that he feared for his life and requesting an investigation and his transfer from WCI. Defendant James Schwochert, an assistant administrator of the Division of Adult Institutions, responded, stating in part:

> Your correspondence dated January 13, 2014, addressed to Department of Corrections Secretary Edward Wall has been forwarded to my office for follow-up and response. . . .
>
> The January 3, 2014 incident you refer to is clearly documented in several incident reports from the staff involved. Your version of events fails to include some key points; specifically, the ones related to your assaultive behavior. . . .
>
> Your request for movement to another state is highly unlikely due to the risk you present to others. . . . At present, you are moved to a different facility on a regular rotation just to assist in the management of your behavior. At some point in time, it will become necessary for you to take the steps to positively change your behavior and move forward. . . . Perhaps it is time for you to try some positive approaches to how you choose to deal with your

incarceration, because it does not appear that your current choices have been effective.

For at least some of plaintiff's time at WCI, he was housed in a segregation unit. Plaintiff states that "While [he was] incarcerat[ed] . . . all defendant(s) [knew that his] mental illness got worse[]." I can infer from plaintiff's complaint that defendants did nothing to help him. Plaintiff wants to be transferred to a mental health facility.

## OPINION

### A. Imminent Danger

Plaintiff seeks leave to proceed *in forma pauperis* in this case. However, as stated above, plaintiff has struck out under 28 U.S.C. § 1915(g). This provision reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

On at least three prior occasions, plaintiff has brought actions that were dismissed because they were frivolous, malicious or failed to state a claim upon which relief may be granted. *Grissom v. Rauschenbach*, 04-cv-1252 (E.D. Wis. Feb. 9, 2005); *Grissom v. Champagne*, 04-cv-1251 (E.D. Wis. Feb. 9, 2005), *Grissom v. Gordon*; 04-cv-1249 (E.D. Wis. Feb. 9, 2005).[2]

---

[2] Beyond plaintiff's three strikes, he has been a frequent litigator in this court, filing over 60 cases since 1990. He was similarly prolific in the Eastern District of Wisconsin, filing approximately 40 cases between 1992 and 2006 before that court barred plaintiff from filing future lawsuits until he paid the outstanding balance of his filing fees. *Grissom v. Mays*, case no. 06-cv-677-JPS (June 21, 2006). At least at this point, I need not consider whether a similar filing bar is appropriate because this court has generally considered "imminent danger" complaints as exempt from its sanctions orders. *See, e.g.*, *Ammons v. Hannula*, case no. 08-cv-608-bbc (W.D. Wis. Nov. 5, 2008).

Therefore, he cannot proceed *in forma pauperis* in either of his cases unless I find that he has alleged that he is in imminent danger of serious physical injury.

To meet the imminent danger requirement of 28 U.S.C. § 1915(g), a prisoner must allege a physical injury that is imminent or occurring at the time the complaint is filed[3] and show that the threat or prison condition causing the physical injury is real and proximate. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Heimermann v. Litscher*, 337 F.3d 781 (7th Cir. 2003); *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In his complaint, plaintiff alleges that he feared further attacks by prison staff and that his mental illnesses were exacerbated by the conditions of confinement. These allegations are sufficient to meet the relatively low bar required to meet the "imminent danger" standard he faces as a three-strikes litigant. *Ciarpaglini*, 352 F.3d at 331 (It is improper to adopt a "complicated set of rules [to discern] what conditions are serious enough" to constitute "serious physical injury.") Therefore, plaintiff may proceed on his claims without prepayment of the $350 filing fee.

B. **Initial Partial Payment**

Although I conclude that plaintiff qualifies to proceed *in forma pauperis* under the imminent danger exception to 28 U.S.C. § 1915(g), plaintiff must still make an initial partial payment of the filing fee. In addition, plaintiff will have to pay the remainder of the fee in installments of 20% of the preceding month's income in accordance with 28 U.S.C. § 1915(b)(2).

---

[3] This means that plaintiff does not lose the ability to proceed on "imminent danger" claims by virtue of his transfer from WCI *after* he filed the complaint.

The initial partial payment is calculated by using the method established in § 1915 by figuring 20% of the greater of the average monthly balance or the average monthly deposits to the plaintiff's trust fund account statement. From the trust fund account statement that plaintiff has submitted, I calculate his initial partial payment to be $0.03. If plaintiff does not have the money in his regular account to make the initial partial payment, he will have to arrange with prison authorities to pay some or all of the assessment from his release account. This does not mean that plaintiff is free to ask prison authorities to pay all of his filing fee from his release account. The only amount plaintiff must pay at this time is the $0.03 initial partial payment. Plaintiff should show a copy of this order to prison officials to insure that they are aware that they should send plaintiff's initial partial payment to this court.

C.   Screening Plaintiff's Claims

In screening plaintiff's claims, the court must construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). However, I must dismiss any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or ask for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e)(2)(B). Without much explanataion, plaintiff mentions a litany of different provisions he believes defendants have violated (including the Wisconsin Administrative Code and state statutes, Eighth Amendment, Americans with Disabilities Act, and *Monell v. Department of Social Services*, 436 U.S. 658 (1978)), but given plaintiff's allegations, the only potentially colorable claims I see in this complaint are (1) an Eighth Amendment claim against defendants for failing to remove plaintiff from the conditions of confinement that

exacerbated his mental illness; and (2) an Eighth Amendment claim against defendants for failing to protect plaintiff from prison staff. I will address these in turn.

1.  **Mental illness**

Plaintiff alleges that he suffers from mental illnesses, the conditions of his confinement in segregation are exacerbating his mental illnesses, and defendants are aware of this, yet do nothing to help him. Prisoners have a right to receive adequate medical care for serious conditions, *Estelle v. Gamble*, 429 U.S. 97 (1976), which includes a right to appropriate mental health treatment. *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983); *see also Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (under Eighth Amendment, "mental health needs are no less serious than physical needs"); *but see Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002) (stating in dicta that "suicidally depressed are entitled, at most, to precautions that will stop them from carrying through; they do not have a fundamental right to psychiatric care at public expense"). Adequate care extends not just to things like medication and therapy but also to the conditions of confinement. When these "are so severe and restrictive that they exacerbate the symptoms that mentally ill inmates exhibit," this may result in cruel and unusual punishment if the defendants are aware of the plaintiff's plight and are refusing to take action despite an ability to do so. *Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1116 (W.D. Wis. 2001).

At this point, plaintiff's allegations are too vague to properly state an Eighth Amendment claim. Federal Rule of Civil Procedure 8 requires plaintiff to plead enough allegations of fact to make a claim for relief plausible, that is, reasonable on its face. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In determining whether the details in the complaint satisfy this standard, a district court should consider only factual allegations and disregard "mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Plaintiff does not explain how the conditions of confinement caused his illness to get worse or how the exacerbation of his mental illness affected him.[4] In addition, although plaintiff states that defendants are aware of his illness, he does not explain when they became aware or why they are the proper officials to sue in this action; presumably, medical personnel at the prison were responsible for treating his mental illness. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (generally, prison officials are "entitled to relegate to the prison's medical staff the provision of good medical care.").

Accordingly, I will dismiss this portion of plaintiff's complaint but give him a chance to submit an amended complaint that better explains the basis for his medical care claims against defendants. Plaintiff should draft the amended complaint as if he were telling a story to people who know nothing about his situation. This means that someone reading the complaint should be able to understand how plaintiff was harmed by the conditions of his confinement, how defendants became aware of plaintiff's problem, and what they did or failed to do in response.

---

[4] At one point plaintiff says that "[b]y holding plaintiff . . . in maximum security prison not at mental facility Waupun prison guards caused substantial injuries to my back." While this may be true, this allegation outlines a potential failure to protect claim, not a medical care claim regarding treatment of his mental illnesses. However, plaintiff does not suggest that the named defendants knew about the threat to plaintiff before the attack occurred, so he cannot proceed on a failure to protect claim.

### 2. Failure to protect

The Eighth Amendment guarantees that prison officials "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984). To state an Eighth Amendment failure to protect claim, a prisoner must allege that (1) he faced a "substantial risk of serious harm" and (2) the prison officials identified acted with "deliberate indifference" to that risk. *Farmer*, 511 U.S. at 834; *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005).

Plaintiff alleges that he was beaten, sexually assaulted, and then threatened by prison staff, and defendant Schwochert blew off plaintiff's complaint about future danger, going so far as to blame plaintiff for the incident. Plaintiff does not allege that he was actually harmed *after* Schwochert failed to take action against the threats against plaintiff, but that is not necessary to sustain an Eighth Amendment claim for nominal and punitive damages. *Turner v. Pollard*, 2014 WL 1706175 (7th Cir. May 1, 2014) (citing *Thomas v. Illinois*, 697 F.3d 612, 614–15 (7th Cir. 2012) (explaining that nominal and punitive damages are available due to "hazard, or probabilistic harm" even in absence of physical or psychological harm) and *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) ("Prison officials who recklessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights, [and may be liable for] nominal and . . . punitive damages.")). Accordingly, I will allow plaintiff to proceed on a failure to protect claim against Schwochert.

Plaintiff's failure to protect claim against defendant Wall is less obvious. Although plaintiff addressed his letter to Wall, it is unclear if he ever saw it or even whether he should be held accountable for failing to do something about it. In *Burks*, the Seventh Circuit stated:

> Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

555 F.3d 592, 595. It is difficult to see how Wall's delegation of the matter to Schwochert could show Wall's deliberate indifference to plaintiff's safety. Nonetheless, because I am giving plaintiff a chance to amend his complaint to explain the basis for his medical claims, I will also allow him to amend his allegations about his medical care claim against Wall in order to show how Wall was deliberately indifferent to his safety.

### D.   Other Motions

Plaintiff has filed two other motions. First, he has filed a motion for appointment of counsel. The term "appoint" is a misnomer, as I do not have the authority to "appoint" counsel to represent a pro se plaintiff in this type of a case; I can only recruit counsel who may be willing to serve in that capacity. In any case, I will deny plaintiff's motion as premature. In deciding whether to try to recruit counsel for plaintiff, I must first find that he has made a reasonable effort to find a lawyer on his own and has been unsuccessful. *Jackson v. County of McLean*, 953 F.2d 1070 (7th Cir. 1992). To prove that he has made reasonable efforts to find a lawyer, plaintiff should give the court rejection letters from at least three lawyers. In his motion, plaintiff does say whether he has attempted to contact private counsel.

In addition, a court will seek to recruit counsel for a pro se litigant only when he demonstrates that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt v.*

9

*Mote*, 503 F.3d 647,654-55 (7th Cir. 2007). It is simply too early in this case to make that determination. At this point, plaintiff's tasks are to amend his complaint to better explain his claims and to contact outside counsel. Although plaintiff suffers from mental illnesses, given his filings in this and other cases he should be able to complete these simple steps. If later developments in the case show that plaintiff is unable to represent himself, he is free to renew his motion at that time.

Plaintiff's second motion is titled "motion for emergency injunction/temporary restraining order and motion for production of documents." Although the motion is difficult to understand, he seems to be requesting preliminary injunctive relief regarding his incarceration and for defendants to produce certain documents. At this point I see no reason to consider a motion for injunctive relief because plaintiff has already been moved out of the prison at which he believes he was in danger of being assaulted, and he must still amend his complaint to better explain his medical care claim. Nor is there any reason to grant the motion for production of documents; as plaintiff should know from his long history of litigation in this and other courts, the court will allow discovery after it holds a preliminary pretrial conference. For now, plaintiff should focus on amending his complaint and contacting outside counsel.

## ORDER

IT IS ORDERED that

1. Plaintiff Terrance Grissom is GRANTED leave to proceed on a failure to protect claim against defendant James Schwochert.

2.  The remainder of the complaint is DISMISSED for failure to comply with Fed. R. Civ. P. 8.

3.  Plaintiff may have until August 18, 2014 to file an amended complaint more fully explaining the basis for his claims that defendants allowed plaintiff's conditions of confinement to exacerbate his mental illnesses and that defendant Edward Wall was responsible for failing to protect him from assaults by prison staff.

4.  Service of the complaint on defendant Schwochert is STAYED pending receipt of plaintiff's amended complaint.

5.  Plaintiff's motion for appointment of counsel, Dkt. 6, is DENIED without prejudice.

6.  Plaintiff's "motion for emergency injunction/temporary restraining order and motion for production of documents," dkt. 13, is DENIED.

7.  Plaintiff is assessed $0.03 as an initial partial payment of the $350 fee for filing this case. He is to submit a check or money order made payable to the clerk of court in this amount on or before August 18, 2014. If plaintiff fails to make the initial partial payment by this deadline or show cause for his failure to do so, I will direct the clerk of court to close the case. Plaintiff is obligated to pay the remainder of the filing fee in monthly payments as described in 28 U.S.C. § 1915(b)(2). This court will notify the warden at plaintiff's institution of that institution's obligation to deduct payments until the filing fee has been paid in full.

Entered this 28th day of July, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge

11